UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILLIAM JESSIE BROWN,

                    Petitioner,

v.

BONITA HOFFNER,

                    Respondent.

_____/

Case No. 1:15-cv-1084

Honorable Janet T. Neff

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner William Jessie Brown is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. On June 29, 2011, a Berrien County Circuit Court jury found Petitioner guilty of assault with a dangerous weapon (felonious assault), MICH. COMP. LAWS § 750.82, first-degree criminal sexual conduct (CSC I), MICH. COMP. LAWS § 750.520b, and possession of a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS § 750.227b. On August 5, 2011, the court sentenced Petitioner as a fourth-offense habitual offender, MICH. COMP. LAWS § 769.12, to respective prison terms of 4 to 15 years, 18 to 60 years, and 2 years.

On October 1, 2015,[1] Petitioner filed his habeas corpus petition raising 12 grounds for relief, as follows:

_____

[1] Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). For purposes of this Report and Recommendation, I have given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

I.      The Defendant's sentences were invalid Because they were Based on Inaccurate Information IE, (Improper Scoring of the Legislatively imposed Sentencing Guidelines.) (Use of Incorrect Burden of Proof) and Insufficient Fact; Therefore His Due-Process Rights were violated.

II.     (Ineffective Assistance of Appellate Counsel) – and Trial Counsel) which violated Petitioner's (6th Amendment right to counsel) (and 14th Amendment right to Due Process) – (Appeal-Counsel was asked by Petitioner to file a (motion For New Trial) and – request for (Evidentiary Hearing) due to (Trial-Counsel's ineffectiveness for failing to investigate.  Also (Appeal-Counsel) was asked to Submit Affidavits and letters from defendant to (Trial-Counsel) as an offer of Proof.

III.    Petitioner's 6th Amendment right to Counsel was violated when (Trial-Counsel) failed to Object to (Trial-Court's denial of juror's being Able to see officer's (Bennie Meekins) (Police-Report) which was favorable evidence to the Petitioner).

IV.     Pe[ti]tioner Assert[]s that his (14th Amendment) right to (Due-Process) was violated due to the delay – of (Alleged-offense) date and the (Commencement of Criminal Proceeding)[.]

V.      (Prosecutorial-Misconduct) – (Prosecutor's Knowing use of Perjured testimony) also (Prosecutor's failure to Corre[c]t false Testimony).  Which violated Petitioner's 14th Amendment of the United States Constitution[.]

VI.     Petitioner[] assert[]s that his (4th Amendment And (14th Amendment right was violated) due to (Police illegal – Search and Seizure) (on the issue of consent.)

VII.    Trial-Judge Abused his discretion which violated Petitioner's right to (Due-Process)[.]  Defendant Assert[]s that (Trial-Judge Abused his discretion and committed error in failing to discharge (Court-Appointed) Attorney and replace him with new (Appointed Counsel.)

VIII.   (Trial-Judge Abused his discretion Which violated defendant's (Due-Process) Rights and Right to a (Fair-Trial)[.]  (Trial-Judge) Abused his discretion by Allowing an expert witness to testify, which Prejudiced the Petitioner.

IX.     Petitioner Assert[]s that his (Due-Process Rights were violated.)  Due to inaccurate information in Presentence Investigation Report.

X.      (Trial-Judge) Abused his discretion when juror[]s were not allowed to see officer (Bennie Meekins) (Police-Report) when they Requested.

XI.     Petitioner's (6th Amendment right to Counsel) was violated when (Trial-Counsel) failed to object to Improper Instructional errors by the (Trial-Judge)[.]

      XII.    This is an (Additional-Issue) Pertaining to the (habitual-enhancement)[.]  The Petitioner received a notice of intent that listed Prior Convictions.  [Multiple deficiencies in the notice are alleged.]

(Pet., ECF No. 8, PageID.43, 46, 64, 72, 84, 91, 95, 97-99, 117, 122 (emphases omitted).)

Respondent has filed an answer to the petition (ECF No. 15) stating that the grounds should be denied because they are procedurally defaulted, noncognizable, and/or without merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that Grounds I to VIII and XI to XII are without merit, Ground IX is both procedurally defaulted and without merit, and Ground X is both procedurally defaulted and noncognizable.  Accordingly, I recommend that the petition be denied.

## Discussion

      I.    <u>Factual allegations</u>

Petitioner's convictions arise out of his rape of a victim (IJ), while armed with a weapon (a shotgun and a hatchet or hammer), on July 17, 2010.  Petitioner initially was charged with CSC I, and the counts of assault with a dangerous weapon and felony firearm were added at the preliminary examination on April 19, 2011.  Petitioner was bound over on all charges.  (Prelim. Exam. Tr., ECF No. 16-2, PageID.266-267.)

Petitioner was tried before a jury beginning on June 28, 2011, and concluding on June 29, 2011.[2]  IJ testified that, on July 17, 2010, shortly after midnight, she went for a walk after she had gotten her grandchildren to sleep.  She frequently walked as a way to relax.  (T. Tr. I, ECF No. 16-3, PageID.405-406.)  IJ followed the usual route she walked, down Pavone Street, turning left onto Cross Street, then turning right on Columbus.  Once on Columbus Street, IJ saw Petitioner

---

[2] The Court hereafter will reference trial transcripts as follows:
Transcript for June 28, 2011:        (T. Tr. I, ECF No. 16-3, PageID.___);
Transcript for June 29,2 011:        (T. Tr. II, ECF No. 16-4, PageID.___).

sitting on his steps, drinking a beer and listening to music, as was his custom.  IJ had known Petitioner for 40 years, since she was about 12 years old.  (*Id.*, PageID.408-409.)  Petitioner was a year behind her in school, and he lived a few blocks away from her.  One of IJ's brothers (Sylvester) was the same age as Petitioner, and they were friends.  (*Id.*, PageID.409-410.)  As she got older, she "hung out" with Petitioner in the neighborhood, and she considered him a very good friend, almost a god-brother.  (*Id.*, PageID.411-412.)  As an adult, she visited with Petitioner approximately once a month.  (*Id.*, PageID.412.)

When she saw Petitioner on July 17, 2010, she asked if she could use his bathroom. Petitioner agreed, and IJ went inside through the front door.  (*Id.*, PageID.416.)  She used the bathroom, but, because the light was out, she left the door open.  (*Id.*, PageID.418.)  As she finished using the bathroom, she looked up to find Petitioner at the door of the bathroom with a gun.  (*Id.*, PageID.417, 422.)  IJ testified that she initially thought that Petitioner was kidding, because she could not believe her friend of 40 years was doing something like that.  (*Id.*, PageID.421.)  IJ knew Petitioner had the shotgun and that he kept it under the couch.  (*Id.*, PageID.422.)  Petitioner pointed the gun at her and said, "[B]**ch pull them pants off."  (*Id.*)  She refused.  She ran out of the bathroom, trying to get to the front door.  (*Id.*, PageID.422.)  IJ testified that she did not believe that she got her pants pulled up before she left the bathroom, explaining that she did not have the use of her right hand, because of an accident at age 16.  (*Id.*, PageID.424, 426.)  Petitioner was well aware of her inability to use her hand, as well as the fact that she had had breast cancer, because they had been friends.  (*Id.*, PageID.426.)  Shortly before IJ reached the porch, Petitioner managed to stop her leaving by grabbing onto her pants.  He still had the gun in his hand.  (*Id.*, PageID.427.)  Petitioner hit IJ in the face with a fist, causing her hit her head against the wall and fall.  Petitioner hit her again, at which point she moved by the loveseat.  (*Id.*, PageID.417.)  She

began to start shaking, beginning to have a mild seizure, to which Petitioner responded, "Have a seizure, b**ch; have it, have it, have it." (*Id.*, PageID.436.) Petitioner continued to order her to take her pants off, again holding the gun and shaking a hatchet or hammer-like object in her face. She at first refused, but ultimately complied and pulled her pants off. (*Id.*, PageID.417-418, 421.) He threw her to the ground, where she laid, crying. (*Id.*, PageID.429.) Petitioner kept calling her "B**ch" and told her that she was "giving him some." (*Id.*, PageID.428.) Petitioner pulled his clothes off and dragged her up on the loveseat, onto her back. (*Id.*, PageID.439, 443.) Petitioner then got on top of her. (*Id.*, PageID.439.) When he finished assaulting her, ejaculating into her vagina, he got off of her. (*Id.*, PageID.442-443.) He told her that he knew that she would go to the police, but he planned to tell them that they were smoking crack and she consented. (*Id.*, PageID.444.) IJ grabbed her panties and pants and ran, putting them on once she got outside. (*Id.* at 442.) She ran next door and beat on the door, asking for help, but the man told her to leave. (*Id.*, PageID.445.) Seeing no one to help her, IJ went home. (*Id.*, PageID.446.) When she arrived home, her mother and her grandchildren were asleep, and she did not want to wake them. (*Id.*, PageID.446-447.) IJ got her douche bag and some vinegar and took a shower, douching twice, in order to wash off the ejaculate. (*Id.*, PageID.447.) She kept the shower short, because she could feel a seizure coming on. (*Id.*, PageID.453.) IJ gathered her clothes and threw them out the back door. (*Id.*, PageID.447.) She quickly went into the bedroom to take some Dilantin, because she had not taken it. (*Id.*, PageID.453.) She laid down, but she could not sleep, as she had to keep getting onto the floor because of her seizure symptoms. (*Id.*, PageID.448, 454.) The next morning, IJ went out and got the clothes and put them with the dirty laundry. (*Id.*, PageID.448.)

IJ did not immediately go to the police, in part because Petitioner was a longtime friend and she therefore thought no one would believe that he had assaulted her. (*Id.*, PageID.449.)

She kept expecting that Petitioner would call her and apologize or explain what had happened, but he did not. (*Id.*) IJ talked to her brothers, especially Sylvester, and they encouraged her to call the police. (*Id.*, PageID.451.) About three days later, she called the police, who came to her house. (*Id.*, PageID.454.) IJ testified that, since the sexual assault, she had had trouble sleeping, was afraid to leave the house, and cried all the time. She reported that she had been seeing a counselor every other Wednesday for some time. (*Id.*, PageID.455-456.)

On cross-examination, defense counsel impeached IJ with minor discrepancies in her testimony, the fact that Officer Meekins' police report referred to IJ drinking beer with Petitioner (though she testified that she did not drink), and with the fact that the report did not mention that Petitioner had a hatchet. (*Id.*, PageID.458, 461.)

Former Benton Harbor Police Officer Benny Meekins testified that he was dispatched to a house on Pavone Street on July 20, 2010, to respond to a complaint about a criminal sexual assault. (*Id.*, PageID.478.) Meekins spoke to IJ, who was extremely upset and kept breaking down as she answered questions. (*Id.*, PageID.479-480.) Meekins took notes and later typed a report. He did not transport IJ for a rape examination, because the incident had happened three days earlier and the evidence was gone. (*Id.*, PageID.481.) After leaving IJ, Meekins went to the house IJ had described and talked to a man who told him that Petitioner William Brown was not there. Meekins tried a second time later, but again was informed that Petitioner was not there. He left a card at the home. Meekins identified Petitioner as the man who had told him that William Brown was not home. (*Id.*, PageID.483-484.) Petitioner went into the police station at about 4:00 or 4:30 a.m. on July 21, 2010, inquiring what was going on. (*Id.*, PageID.484, 486.) Meekins read Petitioner his rights, and Petitioner agreed to answer questions. (*Id.*, PageID.485.) Petitioner told Meekins that he was friends with IJ, but he did not recall her being there late on July 17 or early

18, 2010.  Petitioner smelled of intoxicants, and he was largely nonresponsive to questions.  (*Id.*, PageID.488.)  Petitioner did say that he did not know if he had consensual sex with anyone and did not know if IJ had been at the house, because he was always so drunk that he could not be sure.  (*Id.*, PageID.489.)  Petitioner accompanied Meekins back to Petitioner's house, and Petitioner pointed out the gun to Meekins, which was located under a table in the living room.  (*Id.* at 489-490.)  Meekins seized the gun, which he identified at court.  The gun was in terrible condition, and Meekins was not sure that it would fire, as it had a round in the chamber that had been struck by the firing pin but had not fired.  (*Id.*, PageID.490-491.)  Meekins placed the gun in the department evidence room.  Meekins was no longer a police officer, as he was laid off in October 2010.  (*Id.*, PageID.491-492.)  On cross-examination, Meekins refreshed his recollection with his report to testify that IJ had told him that she had a beer with Petitioner, but she did not mention a hatchet.  (*Id.*, PageID.493-494.)

The jury was excused for the evening, and the court heard a proffer from Susan Holcomb, a limited-license sexual assault counselor with a bachelors degree.  (*Id.*, PageID.496, 503.)  Beginning in 1979, Holcomb worked at a sexual and domestic violence crisis center in Jackson, received substantial sexual assault victim training, completed her bachelor's degree, worked the crisis line for the YWCA for two years, worked for the prosecutor's office, two district attorneys offices, and ultimately was the Director of the Domestic Violence Shelter in Benton Harbor.  (*Id.*, PageID.504-505, 511-14.)  Holcomb proposed to testify that adult victims of sexual assault commonly feel a strong need to immediately clean themselves after an assault.  (*Id.*, PageID.516.)  Many described feeling unable to get themselves clean.  They frequently are more frightened and shocked by an assault by a person they know than by an assault by someone they do not know.  (*Id.*, PageID.517.)  Once a victim gets home, they are bombarded by disbelief, a

realization of all of the people they must talk to, a worry about disease, a realization that they have cleaned up the evidence, and other concerns.  Especially when the victim knows the assailant, it is common to call the police after days or weeks of delay.  (*Id.*, PageID.518-519.)  The court initially reserved judgment on the admissibility of the testimony until the following day.  (*Id.*, PageID.522.) However, after hearing argument from defense counsel that the witness was not placed on a witness list until the Friday before trial, and in light of prejudice to the defense, the court declined to admit Holcomb's testimony.  (*Id.*, PageID.525.)

Juanita Jennings testified that she was IJ's mother and lived in the same house as IJ.  (T. Tr. II, ECF No. 16-4, PageID.536-537.)  The morning after the assault, Juanita Jennings came into the kitchen when IJ was leaving that bathroom.  IJ was in her nightclothes, and Juanita Jennings noticed a bruise and swelling on IJ's thigh.  She asked IJ what had happened, and IJ responded, "I don't know, mama.  I just was trying to get out of there."  (*Id.*, PageID.538.)  Juanita Jennings then looked up at IJ's face and saw that her right eye was swollen and bruised.  But IJ wore sunglasses that Sunday, so Juanita did not get a good look at her eyes.  (*Id.*, PageID.539.) Juanita reported that, whenever she asked about what happened, IJ became upset.  (*Id.*, PageID.540.)  Juanita Jennings told IJ to call the police, but she did not do so right away.  (*Id.*)

Petitioner testified that he was 49 years old and lived at 1237 Columbus Street, where he had lived for most of his life.  (*Id.*, PageID.544.)  Petitioner testified that he had known IJ for 20 to 30 years.  He had never been to her home, but she had come to his home for various activities.  (*Id.*, PageID.546.)  Petitioner testified that IJ came to Petitioner's home around July 17, 2010, although he initially thought it was earlier in the week.  She arrived at about 1:00 a.m. Petitioner was sitting on his porch, drinking a beer.  She joined him and drank some beer.  (*Id.*, PageID.546-547.)  She then asked if she could use his bathroom, and he agreed.  IJ went into the

house, and Petitioner remained on the porch.  After using the bathroom, IJ returned and drank some more beer.  They talked, but he could not recall whether they "participated in some other activities."  (*Id.*, PageID.547.)  IJ left Petitioner's home at some point.  Petitioner denied ever threatening IJ with a weapon or having reason to threaten her.  He also denied forcing her to have intercourse or threatening her with a hammer or hatchet.  (*Id.*, PageID.547-548.)  Petitioner testified that he remembered Officer Meekins coming to his home, and explained that he had denied being at home, because he thought there might have been a warrant for his arrest.  He indicated that he had been arrested on March 17, 2010, for driving on a suspended license, and that he had not been making the required payments on his fines.  Petitioner stated that he denied being home when Meekins came a second time for the same reason.  (*Id.*, PageID.548.)  Later that same morning, Petitioner went into the police station of his own accord.  He testified that he told Officer Meekins the same things he testified to in court.  (*Id.*, PageID.549.)  On cross-examination, however, Petitioner was substantially impeached.  He admitted that Meekins had not asked the same questions at the police interview and that, because he did not remember IJ being at the house the night of the incident, he did not tell Meekins the same thing.  He told Meekins that she came over earlier in the week, but not on the weekend.  (*Id.*, PageID.550-551.)  Despite these statements, and despite not remembering three days after the fact, Petitioner testified on cross-examination that he was now certain that IJ came over early Sunday morning.  (*Id.*, PageID.552-553.)  He explained that he had been drinking heavily for days when he talked to Meekins.  He stated that, when he sobered up, he started to remember things, especially over the year since the sexual assault allegations had been made.  (*Id.*, PageID.554-555.)  Similarly, he testified that, although he told Officer Meekins that two women, Tonya and Antoinette, had been at his house over the weekend, he now remembered that neither was there when IJ was there.  (*Id.*, PageID.557.)  And although

he told Meekins that he could not remember if he had sex with Tonya and Antoinette, he now was sure that he had not had sex.  (*Id.*, PageID.558-559.)  Petitioner also provided vague and contradictory testimony about whether a hammer or hatchet was in his house, though he acknowledged that the gun was present and had belonged to his father.  (*Id.*, PageID.563-567.)

During deliberations, the jury twice sent questions to the court.  First, they sent a note, asking, "Can we see Mr. Meekins' police report?"  (*Id.*, PageID.622.)  The court responded that the jury was only allowed to see things that had been admitted as evidence at trial and that the police report would not be and had not been admitted.  (*Id.*)  Nearly two hours later, the jury sent two questions to the court:  "is possession of having a firearm in your domicile during the commission of a felony in your home?  Or is possession physically holding the firearm during a felony?"  (*Id.*, PageID.622-623.)  The court read to the jury the standard jury instruction on the meaning of possession.  (*Id.*, PageID.623.)  Shortly thereafter, the jury returned its verdict, finding Petitioner guilty of all three charged offenses.  (*Id.*, PageID.625-627.)  After the jury was discharged, the trial court found Petitioner guilty of being a fourth-offense felony offender, reciting the prior qualifying convictions.  (*Id.*, PageID.628-629.)

At a hearing held on August 5, 2011, the court adjusted a variety of sentencing variable points downward before sentencing Petitioner, as a fourth-offense felony offender, to concurrent prison terms of 18 to 60 years for the CSC-I conviction and 4 to 15 years on the felonious-assault conviction, to run consecutively to a term of 2 years for the felony-firearm conviction.

Petitioner, through appellate counsel, filed a motion for new trial based on alleged ineffective assistance of counsel.  He also filed a motion to correct an improper sentence.  A hearing was held on the two motions on February 24, 2012. (Tr. of Hr'g on Mot. for New Trial,

ECF No. 16-6.)  With respect to the first motion, the trial court noted that defense counsel was presumed to be effective and that defense counsel had attached no affidavits or offers of proof to his motion.  The court therefore limited its review to the record.  Noting that trial counsel's decision to call only Petitioner as a witness was presumed to be sound trial strategy, the court held that, even assuming that the witnesses would have testified to what they told the police, the evidence would not have substantially benefited Petitioner at trial.  (*Id.*, PageID.663-664.)  The court noted that the proposed witnesses did not, as the defense argued, say that the victim did not have bruises, it was that they did not remember.  Yet the victim's mother testified that the victim was bruised, in part in a location others would not normally see.  (*Id.*, PageID.664.)  Similarly, the next-door neighbor would only have testified that he did not remember whether the victim banged on his door, not that she did not do so.  (*Id.*, PageID.665-66.)  The court held that, under the circumstances, Petitioner had failed to present facts that would warrant the holding of an evidentiary hearing on whether counsel was ineffective in failing to call other witnesses.  (*Id.*, PageID.677.)  In addition, the court held that Petitioner had failed to present an affidavit or other evidence of the victim's drug and mental-health problems and therefore failed to show that trial counsel was ineffective in failing to perform a background check on the victim, especially in light of counsel's extensive cross-examination of the victim on those subjects.  (*Id.*, PageID.678-679.)  The trial court issued orders denying both motions on February 24, 2012, for the reasons stated on the record at the hearing.  (Ord. Den. Mot. to Correct Sentence, ECF No. 16-7, PageID.728; Ord. Den. Mot. for New Trial, ECF No. 16-7, PageID.729.)  Petitioner sought reconsideration of all but the ninth issue in the motion for relief from judgment.  (Mot. for Reconsid., ECF No. 16-11, PageID.1280-1293.)  The court denied reconsideration on May 5, 2014.  (Cir. Ct. Ord. Den. Mot. for Reconsid., ECF No. 16-12, PageID.1294-1296.)

Petitioner filed an appeal of right to the Michigan Court of Appeals.  In the brief filed by counsel on April 30, 2012, Petitioner raised four grounds for relief:  (1) insufficiency of the evidence; (2) denial of due process by instructional errors and by the denial of the motions for new trial and for an evidentiary hearing; (3) invalid sentences based on inaccurate information, improper scoring of guideline variables, and use of an incorrect burden of proof; and (4) correctly scoring the guidelines would require resentencing.  (Pet'r's Br. on Appeal, ECF No. 16-7, PageID.733-735.)  Petitioner filed a pro per supplemental brief on appeal, raising six additional grounds:  (5) prosecutorial error denying a fair trial; (6) contradictions in the evidence and lack of evidence show that Petitioner did not receive a fair trial; (7) facts and contradictions at the preliminary examination show that Petitioner should not have been bound over for trial; (8) lack of proper police investigation denied Petitioner due process; (9) the district judge should have adjourned the preliminary examination on his own motion for a competency examination; and (10) Petitioner received ineffective assistance of trial counsel in failing to conduct an adequate pretrial investigation and failing to file pretrial motions.  (Pet'r's Supp. Br. on Appeal, ECF No. 16-7, PageID.802.)  In a lengthy unpublished opinion issued on October 16, 2012, the court of appeals rejected all appellate grounds and affirmed the convictions and sentences.  (Mich. Ct. App. Op., ECF No. 16-7, PageID.710-719.)

Petitioner sought leave to appeal to the Michigan Supreme Court, raising the same grounds for relief.  In an order issued on April 1, 2013, the supreme court denied leave to appeal. (Mich. Ord., ECF No. 16-8, PageID.963.)

Petitioner filed a habeas corpus application in the Eastern District of Michigan on September 27, 2013, in which he raised claims not previously exhausted in the state courts.  The court granted Petitioner's motion to stay the petition and hold it in abeyance, pending his

12

completion of the exhaustion process at all levels of the state courts.  *Brown v. Rivard*, 2013, WL 5488453 (E.D. Mich. Oct. 2, 2013).

On March 18, 2014, Petitioner filed a motion for relief from judgment in the Berrien County Circuit Court, raising ten additional claims:  (1) ineffective assistance of appellate counsel; (2) ineffective assistance of trial counsel; (3) violation of Sixth Amendment right to counsel by failure to object to errors in instructions; (4) denial of due process by the delay in the commencement of criminal proceedings; (5) prosecutorial misconduct through knowing use of perjured testimony; (6) illegal search and seizure in violation of Fourth and Fourteenth Amendments; (7) abuse of discretion in failing to replace court-appointed attorney; (8) abuse of discretion and violation of due process in allowing expert witness Susan Holcomb to testify; (9) denial of due process by use of inaccurate information in the Presentence Investigation Report; and (10) denial of due process in not allowing jurors to see Officer Meekins police report.  (Mot. for Relief from J., ECF No. 16-9, PageID.1138-1276.)  The trial court denied the motion on April 3, 2014, because Petitioner's claims either were or could have been raised on direct appeal, and Petitioner had failed to show good cause and actual prejudice excusing his procedural default or actual innocence.  (Op. & Order Den. Relief from J., ECF No. 16-10, PageID.1277-1279.)

Petitioner sought leave to appeal the denial of his motion to both the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave to appeal on November 19, 2014, and September 29, 2015, respectively.  (*See* Mich. Ct. App. Ord., ECF No. 16-13, PageID.1297; Mich. Ord., ECF No. 16-14, PageID.1324.)

On October 20, 2015, the instant case was transferred from the Eastern District of Michigan to this Court, and the Court directed Petitioner to file an amended petition.  Petitioner filed his amended petition on November 19, 2015.

13

II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

14

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Grounds I & IX:  Sentencing Claims

In his first ground for relief, Petitioner claims that his sentences were invalid because they were based on inaccurate information, imposed under the wrong burden of proof, and based on insufficient facts, all in violation of his right to due process. In his ninth habeas

ground, Petitioner argues that his due process rights were violated by the inclusion of false information in his Presentence Investigation Report (PSIR).

## A.    Judicial Factfinding

Petitioner argues that the trial court judge violated his Sixth Amendment right to a trial by jury and his Fourteenth Amendment right to due process, by using, to enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt. Petitioner bases his argument on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 53 US 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).   In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.   In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding.  The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt."  *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).   Petitioner invokes this line of authority in challenging his sentence as violative of his Sixth and Fourteenth Amendment rights.

Unlike the State of Washington's determinate sentencing system at issue in *Blakely*, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term.  The maximum sentence is not determined by the

trial judge, but is set by law.  *See People v. Drohan,* 715 N.W.2d 778, 789-91 (Mich. 2006) (citing MICH. COMP. LAWS § 769.8).  Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *see also People v. Babcock*, 666 N.W.2d 231, 236 n.7 (Mich. 2003) (citing MICH. COMP. LAWS § 769.34(2)).  The Sixth Circuit authoritatively has held that the Michigan indeterminate sentencing system does not run afoul of *Blakely*.  *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does not apply to Michigan's indeterminate sentencing scheme); *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007).

Subsequently, in *Alleyne*, 570 U.S. 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. Shortly thereafter, the Michigan Court of Appeals concluded that *Alleyne* only prohibited judicial factfinding used to determine a statutory mandatory minimum sentence, but had no impact on judicial factfinding in scoring the sentencing guidelines producing a minimum range for an indeterminate sentence, the maximum of which is set by law.  *See People v. Herron*, 845 N.W.2d 533, 539 (Mich. App. 2013).  The Sixth Circuit also concluded that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment.  *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013).  As a consequence, the Sixth Circuit held, the question is not a matter of clearly established Supreme Court precedent.  *Id.* (citing *Montes v. Trombley*, 599 F.3d 490, 498 (6th Cir. 2010)); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .") (quoting *Alleyne*, 570 U.S. at 113 (emphasis added)).

However, in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), in a 5-2 decision, the Michigan Supreme Court held to the contrary.  The court reasoned that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne*.  *Lockridge*, 870 N.W.2d at 506 (emphasis in original).  As a consequence, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional.  The Court's remedy was to make the guidelines advisory only.  *Id.* at 520-21.

However, *Lockridge*, by its own terms, is inapplicable to Petitioner's sentence.  The Michigan Supreme Court only made its holding in *Lockridge* applicable to cases still "pending on direct review."  *Id.* at 523.  Petitioner's conviction was final in 2013; it was not pending on direct review at the time the *Lockridge* court reached its decision in 2015.

Moreover, the Michigan Supreme Court's decision in *Lockridge* does not render the result "clearly established" for purposes of habeas review.  This Court may consider only the "clearly established" holdings of the United States Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  For the same reasons, it may not consider the holdings of the state courts.  Instead, this Court may only grant relief on habeas review if the state court's application of clearly established federal law is "objectively unreasonable."  *Id.* at 410.  "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White*, 134 S. Ct. at 1706-07 (quoting *Harrington*, 562 U.S. at 103).

18

As is apparent from the reasoned decisions of the Michigan Court of Appeals in *Herron*, 845 N.W.2d at 539, and the Sixth Circuit in *Kittka*, 539 F. App'x at 673, and *Saccoccia*, 573 F. App'x at 485, as well as the decision of the dissenting justices in *Lockridge* itself, reasonable jurists could and did disagree about whether *Alleyne* applied to the calculation of Michigan's minimum sentencing guidelines.  *Alleyne* therefore did not clearly establish the unconstitutionality of the Michigan sentencing scheme.

**B.    Sentence Scored on Inaccurate Information**

1.    Scoring of offense variables

Petitioner next suggests that his sentence scoring was based on inaccurate information.  Although the specifics of Petitioner's claim are not clear from his petition, the Court assumes that Petitioner intends to raise the same objections to sentence scoring as he presented on direct appeal.  On appeal, he argued that the trial court erred in scoring 15 points under Offense Variable (OV) 1, MICH. COMP. LAWS § 777.31, 5 points under OV 2, MICH. COMP. LAWS § 777.32, 10 points under OV 4, MICH. COMP. LAWS § 777.34, and 10 points under OV 19, MICH. COMP. LAWS § 777.49.  Petitioner contends that the scoring of the challenged variables was both based on inaccurate information and incorrect under state law.

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law).  There is no constitutional right to individualized sentencing.

*Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978).  Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations."  *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'"  *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted).  A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude."  *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence.  *Tucker*, 404 U.S. at 447.

Petitioner's sentence clearly is neither arbitrary nor shocking.  Further, Petitioner does not even argue that the facts found by the court at sentencing were either materially false or based on false information.  *Tucker*, 404 U.S. at 447.  Instead, he simply contends that the trial court should have reached a different conclusion on the facts before it.  The Michigan Court of Appeals rejected each of Petitioner's challenges to the scoring of the offense variables:

> Next, Brown claims that the trial court erred in scoring 15 points under OV 1, MCL 777.31, and five points under OV 2, MCL 777.32, for the criminal sexual conduct offense because the prosecutor charged him with multiple offenses and he only used a firearm to commit the felonious assault.  Fifteen points must be scored under OV 1 when "[a] firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon." MCL 777.31(1)(c).  Five points must be scored for OV 2 when "[t]he offender possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon." MCL 777.32(1)(c).
>
> Brown's argument is premised on our Supreme Court's holding in *People v McGraw*, 484 Mich 120, 135; 771 NW2d 655 (2009), that "[o]ffense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." Nothing in *McGraw*, however, supports Brown's claim that OVs 1 and 2 cannot be scored for the criminal sexual conduct offense merely because he also used the gun to commit a felonious assault.  The pertinent question is whether Brown, in the course of committing first-degree criminal sexual conduct, possessed or used a pistol, rifle, or shotgun and pointed the gun at the victim.
>
> The victim testified that Brown appeared in the bathroom doorway with a gun in his right hand and commanded:  "Bitch, pull your pants down." Brown later pointed the gun at the victim's face after she tried to escape. He told her that she "gone [sic] do it . . . you giving me some, bitch."  He also had the gun in his hand when he stood over her with his pants down.  Given this evidence, we cannot conclude that the trial court's finding that Brown used the gun during the course of committing first-degree criminal sexual conduct was clearly erroneous. *Osantowski*, 481 Mich at 111.  Indeed, that finding was entirely appropriate.
>
> Brown argues that the trial court erred in scoring ten points under OV 4, MCL 777.34, because there was no evidence that the victim suffered serious psychological injury.  Ten points must be scored for OV 4 if "[s]erious psychological injury requiring professional treatment occurred to a victim."  MCL 777.34(1)(a).  The victim testified that, after the offenses, she has been unable to lead a normal life.  She no longer knows who to trust.  She stays at home and only goes to church; she "[v]ery seldom" goes for walks.  The victim further testified

that she has been seeing a counselor.  She cries a lot because she is "hurting so bad."   The victim's testimony was adequate evidence that the victim suffered serious psychological injury. See, e.g., *People v Ericksen*, 288 Mich App 192, 202-203; 793 NW2d 120 (2010).  Accordingly, the trial court did not clearly err in finding that the victim suffered a serious psychological injury.[3]  *Osantowski*, 481 Mich at 111.

Brown argues that the trial court erred in scoring ten points under OV 19, MCL 777.49.  Ten points must be scored for OV 19 if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice."  MCL 777.49(c).  Here, an officer testified that, after speaking with the victim, he went to Brown's house and Brown, on two separate occasions, told him that William Brown was not at the house.   According to Brown, his lies were unrelated to the commission of the criminal sexual conduct and felonious assault offenses and, therefore, cannot be considered under *McGraw*.  However, our Supreme Court has stated that OV 19 may be scored for conduct that occurs after the sentencing offense is complete.  *People v Smith*, 488 Mich 193, 202; 793 NW2d 666 (2010). Brown also claims that the lies cannot support a score under OV 19.   But the act of providing a false name to police officers constitutes interference with the administration of justice.  *People v Barbee*, 470 Mich 283, 287-288; 681 NW2d 348 (2004).  Because the evidence showed that Brown lied to the officer about his identity while the officer was investigating the offenses, we cannot conclude that the trial court clearly erred when it found that Brown interfered with the administration of justice.  *Osantowski*, 481 Mich at 111.

Brown further argues that, even if OV 19 could be scored, OV 19 is void for vagueness.  "When a defendant's vagueness challenge does not implicate First Amendment freedoms, the constitutionality of the statute in question must be examined in light of the particular facts at hand without concern for the hypothetical rights of others."  *People v Vronko*, 228 Mich App 649, 652; 579 NW2d 138 (1998). "The proper inquiry is not whether the statute may be susceptible to impermissible interpretations, but whether the statute is vague as applied to the conduct allegedly proscribed in this case."  *Id.*  In making a vagueness determination, the Court must consider judicial interpretations of the statute.  *Id.* at 653.  Here, our Supreme Court as held that lying to a police officer about one's identity is assessable under OV 19. See *Barbee* 470 Mich at 287-288.  Because the language of OV 19 is not vague as applied to Brown's conduct, we reject his argument.

There were no sentencing errors.

[3] We reject Brown's argument that the "rule of lenity" requires a score of zero for OV 4 or any other offense variable.  "The 'rule of lenity' provides that courts should mitigate punishment when the punishment in a criminal statute is unclear." *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997). It only applies when the statute's language is ambiguous or in the absence of any firm indication of legislative intent. *Id.* at 700 n 12.  Brown makes no argument that the language of OV 4 or any other offense variable is ambiguous.  Once the trial court found that

> the victim had suffered the requisite psychological injury, it had to score this
> variable as provided by the Legislature. See *Bemer*, 286 Mich App at 32.

(Mich. Ct. App. Op., ECF No. 16-7, PageID.715-717.)

As discussed by the court of appeals, each of the factual findings on the offense variables were patently reasonable on the basis of the trial testimony and the jury's verdict. The victim testified that Petitioner threatened her with both a gun and a hatchet/hammer, and she was afraid that she was going to be shot or otherwise attacked with the weapons. She testified that the gun was pointed directly at her face when Petitioner demanded that she provide him sex. Under the circumstances, her fear of an immediate battery was reasonable, as the jury concluded. Moreover, to the extent that Petitioner argues that *People v McGraw*, 771 N.W.2d 655 (2009), requires a different result on OV 1 and OV2, his claim rests solely on state law. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).

Petitioner's challenge to the scoring of OV 4 fails for similar reasons. The victim cried repeatedly during her testimony and stated that, since the sexual assault, she has lost her ability to trust others and is afraid to leave the house to go about her normal affairs. She also testified that she has needed to consult a therapist to deal with the trauma from the assault. The state court reasonably concluded that those facts were sufficient to support a finding that the victim

suffered serious psychological injury.  Petitioner points to no inaccurate information on which the state court relied.

Further, with respect to the scoring of OV 19, Petitioner utterly fails to identify how the state court relied on inaccurate information.  Petitioner himself admitted that he had twice lied to the investigating police officer, which prevented the investigation from going forward for at least some period of hours, even if Petitioner later came to the police station.  As the court of appeals reasonably concluded, Petitioner's lies supported a finding that he had interfered with justice.

Finally, Petitioner cannot demonstrate that OV 19 was vague or that he was entitled to application of the rule of lenity in consideration of OV 19 and OV 4.  The Supreme Court has discussed the varying manifestations of the due process right to fair warning of criminal responsibility, including the rules of vagueness and lenity:

> There are three related manifestations of the fair warning requirement. First, the vagueness doctrine bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926); *accord, Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939).  Second, as a sort of "junior version of the vagueness doctrine," H. PACKER, THE LIMITS OF THE CRIMINAL SANCTION 95 (1968), the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered.  *See, e.g., Liparota v. United States*, 471 U.S. 419, 427, (1985); *United States v. Bass*, 404 U.S. 336, 347-348 (1971); *McBoyle, supra*, at 27.  Third, although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, *see, e.g., Bouie, supra*, at 357-359; *Kolender, supra*, at 355-356; *Lanzetta, supra*, at 455-457; JEFFRIES, LEGALITY, VAGUENESS, AND THE CONSTRUCTION OF PENAL STATUTES, 71 Va. L.Rev. 189, 207 (1985), due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope, *see, e.g., Marks v. United States*, 430 U.S. 188, 191-192 (1977); *Rabe v. Washington*, 405 U.S. 313 (1972) (per curiam); *Bouie, supra*, at 353-354; *cf.* U.S. CONST., Art. I, § 9, cl. 3; *id.*, § 10, cl. 1; *Bouie, supra*, at 353-354 (Ex Post Facto Clauses bar legislatures from making substantive criminal offenses retroactive).  In each of these guises, the

touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal.

*United States v. Lanier*, 520 U.S. 259, 266 (1997).  The Court also repeatedly has made clear that the "'rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended.'"  *Maracich v. Spears*. 570 U.S. 48, 76 (2013) (quoting *Barber v. Thomas*, 560 U.S. 474, 488 (2010)).

The Michigan Court of Appeals reasonably concluded that the language of OV 19, requiring the scoring of 10 points if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice," MICH. COMP. LAWS § 777.49(c), was neither vague nor ambiguous.  Indeed, in *People v. Barbee*, 681 N.W.2d 348 (Mich. 2004), the Michigan Supreme Court expressly rejected Petitioner's argument that lying to police officers could not support the scoring of ten points for OV 19, stating, "[W]e find that the phrased 'interfered with or attempted to interfere with the administration of justice' encompasses more than just the actual judicial process.  Law enforcement officers are an integral component in the administration of justice, regardless of whether they are operating directly pursuant to a court order." *Id.* at 350-351 (quoting MICH. COMP. LAWS § 777.49(c)).  The *Barbee* decision was reached in 2004, more than five years prior to Petitioner's commission of the offense.  Vagueness in the statute, if any, was fully clarified well before Petitioner committed his offenses.

In addition, as the court of appeals discussed in footnote 3, Petitioner utterly fails to point to ambiguity in the language of OV 4.  He simply disagrees with the victim's testimony and the court's finding.  Such disagreement does not support a conclusion that the finding that the victim suffered serious psychological injury was based on inaccurate information.

In sum, Petitioner's claims concerning his sentence scoring clearly fall far short of the sort of egregious circumstances implicating due process.  The state-court's rejection of Petitioner's claim was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent.  28 U.S.C. § 2254(d).

2.    Inaccurate Information in PSIR

Petitioner argues in his ninth ground for habeas relief that he was sentenced on inaccurate information because the PSIR lists 39 convictions in Petitioner's prior criminal history, despite the fact that 10 of those charges were actually dismissed.  Petitioner suggests that his sentence was influenced by the additional 10 charges over and above the 29 admitted felonies in his criminal history.

As Respondent notes, Petitioner's challenge to the felonies listed in his PSIR was not raised at any level of the state courts until he filed his motion for relief from judgment.  The trial court denied the motion for relief from judgment on the ground that Petitioner had failed to demonstrate cause and prejudice or actual innocence excusing his failure to raise the claim on direct appeal.  (Ord. Den. Relief from J., ECF No. 16-10, PageID.1277-1279.)  The court of appeals also expressly relied on the procedural bar in denying leave to appeal.  (Mich. Ct. Appeals Order, ECF No. 16-13, PageID.1297.)

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state

26

court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice.  *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.  The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Under MICH. CT. R. 6.508(D)(2) and (3), a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been raised on direct appeal.  The Sixth Circuit has held that a state-court's denial of a motion under MICH. CT. R. 6.508(D)(2), which precludes relief if the claim already was raised and denied in a previous appeal, is a denial on the basis of collateral estoppel, which does not procedurally default a claim for habeas relief.  *See Amos v. Renico*, 683 F.3d 720, 727 (6th Cir. 2012) (citing

*Skinner v. McLemore*, 425 F. App'x 491, 495 (6th Cir. 2011)).  For a claim that could have been raised in a previous appeal, the defendant is entitled to relief only if he can establish "good cause" for failing to raise the grounds on appeal and "actual prejudice," as shown by a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand."  MICH. CT. R. 6.508(D)(3)(a)-(b).  In assessing how "firmly" a state procedural rule has been established, the critical inquiry is whether, viewed from the time of the petitioner's later significant actions or inaction, the petitioner could be deemed to have been apprised of the procedural rule's existence.  *Luberda v. Trippett*, 211 F.3d 1004, 1006-07 (6th Cir. 2000).  Because MICH. CT. R. 6.508(D) was enacted in 1989 and Petitioner's conviction and appeals took place more than 20 years thereafter, MICH. CT. R. 6.508(D) was a "firmly established" procedural rule for purposes of Petitioner's action.  *See Luberda*, 211 F.3d at 1007; *Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir. 1998).

Here, the trial court expressly relied on the procedural default in denying Petitioner's claim.  That reliance was well grounded in the facts.  Petitioner was or should have been fully aware of the issue at the time of his direct appeal, but the issue was not raised either in the brief filed by appellate counsel or in Petitioner's own supplemental brief.  Petitioner's claim therefore is barred, unless he can demonstrate either cause and actual prejudice excusing the default or actual innocence.

Although ineffective assistance of appellate counsel may serve as cause excusing a failure to raise a claim on direct appeal, to serve as cause to excuse the default, the claim of ineffective assistance of counsel must itself be properly exhausted.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Buell v. Mitchell*,  274 F.3d 337, 349 (6th Cir. 2001); *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001).  Petitioner never raised – either in the state courts or in this

Court – the ineffective assistance of counsel in relation to his failure to present his ninth habeas ground on direct appeal.  He therefore failed to exhaust his claim of ineffective assistance of appellate counsel, and it cannot serve as cause to excuse his procedural default of his ninth habeas ground.

Moreover, even were the Court to consider the claim on the merits, Petitioner has failed to demonstrate that his sentence was based on material "misinformation of constitutional magnitude."  *Roberts,* 445 U.S. at 556; *see also Tucker,* 404 U.S. at 447; *Townsend,* 334 U.S. at 741.  As discussed, to prevail on such a claim, the petitioner must show both that the information before the sentencing court was materially false and that the court relied on the false information in imposing the sentence.  To prove actual reliance on misinformation, Petitioner must show that the trial court gave "explicit attention" to the inaccurate information, based its sentence at least in part on that misinformation, or gave "specific consideration" to the information before imposing sentence.  *Tucker,* 404 U.S. at 447.  Here, Petitioner expressly represents that the PSIR listed the 10 disputed charges as "nolle prosequi."  (Am. Pet., ECF No. 8, PageID.98.)  In other words, the trial court was expressly informed that Petitioner had not been convicted of those 10 offenses.  Further, Petitioner utterly fails to demonstrate that the court actually treated his prior criminal history differently for having only 29 past convictions rather than 39 past convictions.  Nothing in the sentencing transcript suggests reliance by the trial court on any of the disputed convictions.

As a consequence, the state courts reasonably rejected Petitioner's ninth ground for habeas relief, because the claim is both procedurally barred and meritless.

IV.    Ground IV:  Delay in Commencing Criminal Proceeding

Petitioner argues that he was denied due process when the criminal proceedings were not initiated against him until nine months after the offense conduct.  The offense conduct occurred on July 17, 2000.  A warrant was issued for Petitioner's arrest on March 2, 2011; he was arrested on April 7, 2011; he was arraigned on April 8, 2011; he was heard on a preliminary examination on April 19, 2011; and he was tried beginning June 28, 2011.  (*See* Index of Record, ECF No. 16-1, PageID.216-217.)  Petitioner does not assert that he was denied his right to a speedy trial.  Instead, Petitioner contends that there was an unreasonable delay in charging him between the offense date of July 17, 2010, and the date the warrant was issued on March 2, 2011, which, he contends, violated due process.

Petitioner raised the claim for the first time in his motion for relief from judgment, which the trial court denied on April 3, 2014, because the claim could and should have been raised on direct appeal.   As I earlier discussed, "[i]f a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 340 (2010).  Nevertheless, the United States Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  *See also* 28 U.S.C. § 2254(b)(2) ("An application

30

for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Because Petitioner's claim so clearly lacks merit, I will assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default.  *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

In *United States v. Marion*, 404 U.S. 307 (1971), the Supreme Court first considered whether and under what provisions the United States Constitution might affect the constitutionality of  a lengthy pre-indictment delay.  The Court expressly held that such a delay was irrelevant under the Speedy Trial Clause of the Sixth Amendment.  *Id.* at 320.  The Court went on to observe that statutes of limitations provided the primary protection of legislatively enacted limits on prosecutorial delay.  *Id.* at 322.  Nevertheless, the Court held that, in addition to the statute of limitations, the Due Process Clause had a limited role to play in protecting against oppressive delay.  The Court recognized that, while prejudice was necessary to any such claim, the Court did not need to reach to question of "when and in what circumstances actual prejudice resulting from preaccusation delays requires the dismissal of the prosecution." *Id.* at 324-25.

A few years later, in *United States v. Lovasco*, 431 U.S. 783 (1977), the Supreme Court considered the nature of the limit imposed by the Due Process Clause on pre-accusation delay.  The Court reversed the decision of the Eighth Circuit, which had held that, because the 18-month delay between the offense date and the indictment was "'unjustified, unnecessary, and unreasonable,'" and because two witnesses had become unavailable to the defendant in the interim, the criminal action should be dismissed.  *Id.* at 787 (quoting *United States v. Lovasco*, 532 F.2d 59, 61 (1976)).  The Court held that "the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to

31

seek an indictment.  *Id.* at 790.  Instead, the only question under the Due Process Clause was whether, under the circumstances of the case, the delay of the indictment "violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define the 'community's sense of fair play and decency.'"  *Id.* at 790 (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935), and *Rochin v. California*, 342 U.S. 165, 173 (1952)).  The Supreme Court expressly rejected the notion that, once a prosecutor has probable cause, he is obligated by the Due Process Clause to bring charges promptly.  *Id.* at 794.  Further, the Court identified a fundamental difference between "investigative delay" and "delay undertaken by the Government solely 'to gain tactical advantage over the accused[.]'"  *Id.* (quoting *Marion*, 404 U.S. at 324).  Only the latter has the potential to violate due process.  Based on these considerations, and despite some prejudice to the accused, the Court held that the lower courts had erred in dismissing the prosecution.  *Id.* at 796.

The Sixth Circuit has interpreted *Lovasco* as holding that "'dismissal for pre-indictment delay is warranted only when the defendant shows [1] substantial prejudice to his right to a fair trial *and* [2] that the delay was an intentional device by the government to gain a tactical advantage.'"  *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992) (quoting *United States v. Brown*, 667 F2d 566, 568 (6th Cir. 1982) (per curiam) (emphasis added)).  *Accord United States v. Gouveia*, 467 U.S. 180, 192 (1984); *Hoffa v. United States*, 385 U.S. 293, 310 (1966); *Parker v. Burt*, 595 F. App'x 595, 600-601 (6th Cir. 2015).  In the instant case, Petitioner utterly fails to meet either prong of the standard.  Petitioner acknowledges that the delay in bringing the case stemmed from the laying off of Officer Meekins in October 2010, not long after the prosecutor asked for additional investigation, as well as the possible negligence of other officers in failing to complete the investigation after Meekins' layoff, and the negligence of the prosecutor in ensuring

that his request for further investigation went to a new officer.  (*See* Mot. for Relief from J., ECF No. 16-9, PageID.1224-1227; T. Tr. I, ECF No. 16-3, PageID.491-492.)  Nothing about the alleged course of conduct suggests that the delay in charging Petitioner was intentional or tactical.  In addition, Petitioner fails to show substantial prejudice caused by the delay.  Although he broadly suggests that witnesses may have had better memories and that he was unable to locate unidentified witnesses for trial, Petitioner utterly fails to demonstrate what witness was unavailable for trial who could have made a difference to the outcome.  Thus, the prejudice he alleges falls short of that deemed insufficient in *Lovasco*.

For both reasons, the Michigan courts reasonably rejected his due process claim based on the delay in initiating the proceedings.

V.    Ground V:  Prosecutorial Misconduct – Perjured Testimony

In his sixth ground for habeas relief, Petitioner contends that the prosecutor committed misconduct by allowing the victim to present perjured testimony at both the preliminary examination and at trial.  Specifically, Petitioner alleges that the prosecutor knew that the victim was giving perjured testimony with respect to whether Petitioner went to school with the victim or the victim's younger brother.  He also alleges that the victim gave conflicting and therefore false information about whether she stopped to talk to Petitioner or whether she just asked to use the bathroom.  Further, he contends that the victim perjured herself by denying drinking with Petitioner, which conflicted with Officer Meekins' police report.

Petitioner raised the issue respecting the preliminary examination in his pro per supplemental brief on appeal.  The Michigan Court of Appeals rejected the claim, as follows:

> In a brief submitted under Standard 4, Brown argues that he should not have been bound over for trial because the victim testified inconsistently with the police report and, therefore, must have offered perjured testimony at the preliminary examination.  He also argues that the prosecutor committed misconduct when he

> allowed the victim to commit perjury.  However, the record does not support that
> the victim committed perjury at the preliminary examination.  Moreover, Brown
> has not provided us with any legal authority for the proposition that a prosecutor
> must disbelieve his own witness when the witness testifies to facts that are not in
> the police report.  Therefore, he has abandoned this claim of error. See *People v
> Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).  In any event, "the
> presentation of sufficient evidence to convict at trial renders any erroneous
> bindover decision harmless." *People v Bennett*, 290 Mich App 465, 481; 802 NW2d
> 627 (2010).

(Mich. Ct. App. Op., ECF No. 16-7, PageID.717.)  Petitioner raised the issue with respect to the

victim's trial testimony in his motion for relief from judgment.   The trial court found that

Petitioner's claim was procedurally barred because he could have but did not raise the issue on

direct appeal, despite having filed a Standard 4 brief.  (Op. & Ord. Den. Mot. for Relief from J.,

ECF No. 16-10, PageID.1279.)  Because Petitioner argues that ineffective assistance of counsel

excuses his procedural default, the court will skip the procedural-default analysis and proceed to

the merits of the claim.  *Hudson*, 351 F.3d at 216 (citing *Lambrix*, 520 U.S. at 525).

       The Supreme Court repeatedly has recognized that "deliberate deception of a court

and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands

of justice.'"  *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294

U.S. 103, 112 (1935)).  To establish such a prosecutorial misconduct claim, Petitioner must show

"(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew

it was false." *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted).

*See also Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998).  Petitioner bears the burden of demonstrating

that the testimony was actually perjured.  *Lochmondy*, 890 F.2d at 822.  "[M]ere inconsistencies

in testimony by government witnesses do not establish knowing use of false testimony."  *Id.*

       Petitioner fails to make the necessary showing to establish a due process claim

based on perjured testimony.  The ostensible discrepancies he notes in the victim's various

statements about how she knew Petitioner were not, in fact, inconsistent.  The victim indicated that

Petitioner was in her brother's class, about a year younger than she was, and that she had gone to school with him.  All of those statements may be true at the same time.  Petitioner therefore cannot demonstrate that the victim's testimony was actually false.  Further, any discrepancy about whether Petitioner was in the victim's class at school or in her brother's class is irrelevant and immaterial to any issue in dispute at trial.  Petitioner himself admitted that he had known the victim for between 20 and 30 years.  (T. Tr. II, ECF No. 16-4, PageID.545.)  Finally, Petitioner provides absolutely no evidence that the prosecutor knowingly introduced any false testimony.

Similarly, the mere fact that the victim testified that she did not drink with Petitioner on the evening of the assault did not constitute perjury, solely because the police officer reported that she had done so.  Instead, it amounted to an inconsistency in the testimony that was fodder for impeachment, which defense counsel heavily utilized at trial.  Such inconsistencies in testimony are common in trials, and it is the role of the jury to determine which witnesses to believe.  *See Lochmondy*, 890 F.2d at 822; *Coe*, 161 F3d at 343; *Rosencrantz v. Lafler*, 568 F.3d 577, 587 (6th Cir. 2009).

In sum, Petitioner fails to show that any material testimony was false, much less that the prosecutor knowingly presented such false testimony.  As a consequence, the Michigan courts reasonably rejected Petitioner's fifth ground for habeas relief.

VI.   Ground VI:  Illegal Search & Seizure

Petitioner argues that the gun admitted into evidence was seized without cause and without consent, as Petitioner did not realize that he could refuse to allow Officer Meekins to enter the house to seize the gun.  According to Petitioner, he went to the police station to talk to Meekins, and, during the course of the police interview, Petitioner admitted that he had a shotgun in his home that had belonged to his father, and that he kept the gun under the coffee table.  Thirty

35

minutes after Petitioner left the interview, Officer Meekins came to Petitioner's door, told him that he could not keep a weapon in his house, and ultimately entered and retrieved the weapon, apparently with Petitioner's acquiescence.  Petitioner argues that Meekins did not have a warrant or a consent form, and Petitioner was not aware that he could refuse Meekins' entry into the home.

Petitioner's claim is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also Queen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims).  In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim.  *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

In order for the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism.  *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985).  If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error.  *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

In the present case, Petitioner cannot satisfy either prong of the *Stone v. Powell* standard.  First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial.  Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional

searches and seizures.  *See People v. Margelis*, 186 N.W. 488 (Mich. 1922).  After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment.  *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982).  Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

Second, to satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down.  *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim).  The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error."  *Gilbert v. Parke*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Here, the question of the legality of the search was raised on direct appeal. Petitioner contended that trial counsel had been ineffective in failing to move to exclude the evidence of the gun, because the gun was unlawfully seized.  The court of appeals rejected the claim of ineffective assistance of counsel, because the underlying claim was meritless:

> Searches and seizures conducted without a warrant are unreasonable per se, subject to several exceptions, including a search conducted pursuant to consent. *People v Brown*, 279 Mich App 116, 131; 755 NW2d 664 (2008).  Here, police testimony established that the gun at issue was seized after Brown gave his consent to search. Hence, any objection to the admission of the gun on that basis would have been futile. See *Fike*, 228 Mich App at 182.

(Mich. Ct. App. Op., ECF No. 16-7, PageID.715.)  The state court's determination was fully supported by Meekins' testimony.  Indeed, Meekins testified that Petitioner had accompanied him back to the house and pointed out where the gun was located.  (T. Tr. I, ECF No. 16-3, PageID.489-

490.)  No contrary evidence was presented on the record.  Thus, the state corrective mechanism was available and utilized.  Petitioner cannot show that it had broken down.

Accordingly, Petitioner's search-and-seizure claim is barred by *Stone v. Powell*.

VII.    Ground VII:  Substitution of Appointed Counsel

Petitioner argues in his seventh ground for relief that the trial court abused its discretion and denied him due process when the court refused to discharge appointed counsel and replace him with a new appointed attorney.  He attaches a lengthy letter, which he purportedly sent to the trial judge at some point prior to trial.  (Ex. C to Am. Pet., ECF No. 8, PageID.108-116.)  The court acknowledged receipt of a letter from Petitioner on June 7, 2011, approximately two weeks before trial was originally scheduled and three weeks before trial.   (*See id.*, PageID.104; Index of Record, ECF No. 16-1, PageID.217.)  In his letter, Petitioner complained that his attorney had not obtained, reviewed, or provided to Petitioner all police reports, including one that contained a statement by Rodney Jenning, the victim's brother, reporting that he had understood that Petitioner had put the gun into the victim's mouth.  Petitioner argued that his attorney was not giving proper attention to the case, and he expressed a wish to subpoena various documents, including any analyses of fingerprints and DNA that Petitioner assumed had been conducted (none were), as well as the results of the rape kit, which was never obtained.  Petitioner based his argument about the need for further evidence on police reports presented in the motion for relief from judgment and the appeal from the denial of that motion. (*See* Attach. to Appellant's Br. on Appeal, ECF No. 16-7, PageID.839-846.)  The letter, while complaining about counsel's alleged failures, did not expressly request that counsel be replaced.  (*Id.*)

The Sixth Amendment provides a criminal defendant with the right "to have the Assistance of Counsel for his defense."  U.S. Const., amend. VI.  One element of that right is the

right to have counsel of one's choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). However, the right to counsel of choice is not without limits. *Id.* at 148; *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007). "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Gonzalez-Lopez*, 548 U.S. at 151 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988), and *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)). "'An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel.'" *Mooneyham*, 473 F.3d at 291 (quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)); *see also Caplin & Drysdale*, 491 U.S. at 624 ("[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."). Thus, where a court is faced with a defendant's request to effect a change in his representation by way of a motion to substitute counsel, the court must determine whether there is good cause for the substitution by balancing "the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996).

Petitioner has failed to demonstrate that he clearly and unequivocally requested substitution of counsel. Moreover, Petitioner's proposed bases for substituting counsel neither alleged nor demonstrated that counsel was ineffective prior to trial. Instead, Petitioner simply based his complaint on a mistaken understanding of what evidence was available and whether the police reports were admissible. I note that Petitioner attached to his brief on appeal multiple letters from counsel, responding to Petitioner's various theories and defenses, some of which were dated prior to trial. (*See* May 26, 2011, Letter of Defense Counsel, ECF No. 16-7, PageID.851 (advising that police reports were not admissible, that no rape kit nor DNA evidence was available, and that

the history of the weapon was irrelevant); May 10, 2011, Letter of Defense Counsel, ECF No. 16-7, PageID.852 (advising that past consensual activity of the victim was inadmissible, that all police reports had been received and no "original" report existed, that the victim's criminal history would only be admissible under certain circumstances, that no fingerprint evidence existed, and that counsel would provide to Petitioner a copy of the transcript of the preliminary examination once it was prepared).  Notwithstanding Petitioner's hyperbolic claims that counsel failed to investigate and failed to obtain evidence, defense counsel's letters indicate that counsel listened to Petitioner's concerns, considered those concerns, and made reasonable strategic decisions about how to try the case.  They therefore undermine Petitioner's claim that he was entitled to the appointment of substitute counsel.

Because he never expressly requested substitution of counsel and because he failed to show any basis for substitution of counsel, Petitioner is not entitled to relief on his seventh habeas ground.

VIII.    Ground VIII:  Expert Witness

In his eighth ground for relief, Petitioner argues that the trial court abused its discretion and deprived him of due process by permitting an expert witness on victim responses to sexual assault to testify at trial, which prejudiced Petitioner.  Petitioner's argument is frivolous.

Even if the trial court admitted the testimony of the sexual-assault expert, the claim would not be cognizable on habeas review.  The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle*, 502 U.S. 62, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law

40

questions." *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).  Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

No Supreme Court decision bars the admission of expert testimony on the behavior of sexual-assault victims.  Courts routinely allow the admission of sexual-assault experts to testify to explain victim responses to sexual assault.  Nothing about a court's decision to admit the testimony of a sexual-assault expert offends due process.

Moreover, as a factual matter, the trial court, after considering Holcomb's proposed testimony outside the presence of the jury, determined that she would not be allowed to testify before the jury.  (*See*, T. Tr. I, ECF No. 16-3, PageID.496 (jury excused); *id.*, PageID.525 (denial of motion to admit expert testimony).  Because the expert witness was never allowed to testify before the jury, Petitioner could not have been prejudiced by her testimony.

IX.     <u>Ground X:  Denial of Jury's Request to See Police Report</u>

Petitioner argues that the trial court abused its discretion when it denied the jury's request to see Officer Meekins' police report.  Petitioner raised his claim for the first time in his motion for relief from judgment.  The trial court denied the motion for relief from judgment, concluding that Petitioner had failed to demonstrate cause excusing his failure to raise the argument on direct appeal, in violation of Mich. Ct. R. 6.508(D)(3).  (Op. & Ord. Den. Mot. for Relief from J., ECF No. 16-10, PageID.1277-1279.)  The court denied reconsideration of the issue for the same reason on May 5, 2014.  (Ord. Den. Reconsid. of Op. & Ord. Den. Relief from J., ECF No. 16-12, PageID.1296.)

As with most of Petitioner's claims on habeas review, Ground X is procedurally defaulted, and Petitioner utterly failed in the trial court or in this Court to even allege cause and prejudice excusing his default.  Moreover, as both trial counsel and the trial court advised Petitioner, the police report was inadmissible at trial because it was hearsay.  (May 26, 2011 Letter of Defense Counsel, Ex. C to Mot. for Relief from J., ECF No. 16-9, PageID.1252; T. Tr. II, ECF No. 16-4, PageID.622 (denying the juror's request, stating, "You're only permitted to consider those things which have been admitted as evidence in the case, and the police report would not be and has not been admitted as evidence.").  As I earlier discussed, the Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.'"  *Stumpf*, 722 F.3d at 746 n.6 (quoting *Bradshaw*, 546 U.S. at 76).  The trial court's ruling that the police report was not and could not be evidence in the case therefore precludes relief on Petitioner's tenth habeas ground.

X.    Issue XII:  Improper Habitual-Offender Notice

Petitioner contends that the notice of intent to impose a habitual enhancement to his sentence was defective in a variety of ways.  Specifically, he contends that the notice was not filed within 21 days and was not served on him within 21 days.  He also contends that the document was not stamped or signed, that the date was written in, not typed, and that one of the prior offenses listed in the notice was 18 years old.  Petitioner asserts that all of these defects violated his right to due process.

The Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense.  *See*, *e.g.*, *In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977).  This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. *Combs v. Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976).  Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Id.*  "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review."  *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)).  "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings."  *Mira*, 806 F.2d at 639.  In other words, as long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied.  *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

Although he complains about technical defects in the issuance of the habitual-offender notice, Petitioner does not deny that he received notice of the habitual-offender enhancement. Moreover, the record reflects that a supplemental information was filed on April 26, 2011, to include a fourth-offense, habitual-offender charge. (Index of Record, ECF No. 16-1, PageID.217.) The trial court found Petitioner guilty of being a fourth habitual offender immediately after the jury returned its verdict. The court concluded that Petitioner was guilty based on his guilty pleas to four offenses from 1993, 1999, 2002, and 2009. Petitioner raises no factual dispute to the court's determination.

As a consequence, Petitioner utterly fails to demonstrate that he lacked notice of the habitual-offender enhancement. He therefore fails to demonstrate constitutional error on his twelfth habeas ground.

XI:    Grounds II, III, & XI:  Ineffective Assistance of Counsel

Petitioner raises numerous claims of ineffective assistance of trial and appellate counsel. In Ground II, he claims that his appellate attorney committed ineffective assistance of counsel when appellate counsel failed to include affidavits and letters from Petitioner as offers of proof to support the motion for new trial, in which Petitioner claimed that trial counsel was ineffective in failing to investigate. In that same ground, he argues multiple failures in trial counsel's investigation. He complains that trial counsel did not have the weapon checked for fingerprints, which Petitioner conclusorily states would have shown that the witness lied about Petitioner pointing the gun at her. In addition, he asserts that trial counsel was ineffective in failing to determine when Officer Meekins was laid off, when the prosecutor had received the complaint, and whether the defense had all police reports. Further, he complains that trial counsel failed to investigate whether medical records or witness statements supported the victim's claim of injury.

44

In Ground III, Petitioner argues that his trial attorney rendered ineffective assistance of counsel when he failed to object to the trial court's refusal to allow the jury to see the transcript of Officer Meekins' police report and failed to ensure that the jury saw the transcript of the preliminary examination.  Finally, in Ground XI, Petitioner argues that his trial attorney rendered ineffective assistance by failing to object to improper jury instructions.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make

45

the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S.

365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690). This duty includes the obligation to

investigate all witnesses who may have information concerning his or her client's guilt or

innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a

particular decision not to investigate must be directly assessed for reasonableness in all the

circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466

U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether

they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); accord *Clinkscale v.

Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly strategic decision is not objectively

reasonable "when the attorney has failed to investigate his options and make a reasonable choice

between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991) (cited in *Combs v. Coyle*,

205 F.3d 269, 288 (6th Cir. 2000)).

       Courts have not hesitated to find ineffective assistance in violation of the Sixth

Amendment when counsel fails to conduct a reasonable investigation into one or more aspects of

the case and when that failure prejudices his or her client. For example, in *Wiggins v. Smith*, 539

U.S. 510, 524-29 (2003), the Supreme Court held that the petitioner was entitled to a writ of habeas

corpus because his counsel had failed to conduct a reasonable investigation into potentially

mitigating evidence with respect to sentencing. *Id.* According to the Court, "counsel chose to

abandon their investigation at an unreasonable juncture, making a fully informed decision with

respect to sentence strategy impossible." *Id.* at 527-28. Consistent with *Wiggins*, the Sixth Circuit

has held, in a variety of situations, that counsel's failure to investigate constituted ineffective

assistance in violation of the Sixth Amendment. *See, e.g., Towns*, 395 F.3d at 258-59. (holding

that defense counsel's failure to investigate potentially important witness in robbery and felony

murder trial was unreasonable, and thus constituted ineffective assistance, in violation of Sixth Amendment); *Combs*, 205 F.3d at 287-88 (holding that defense counsel was constitutionally ineffective for failing to investigate adequately his own expert witness, who testified that, despite the defendant's intoxication at the time of the crime, the defendant nevertheless was capable of forming the requisite intent to commit the crimes); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992) (holding that counsel was constitutionally ineffective for failing to conduct an investigation into certain physical evidence that would have undermined the prosecution's theory that the victim was shot at a distance); *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987) (holding that counsel's failure "to investigate a known and potentially important alibi witness" constituted ineffective assistance because "[c]ounsel did not make any attempt to investigate this known lead, nor did he even make a reasoned professional judgment that for some reason investigation was not necessary"); *see also Clinkscale*, 375 F.3d at 443 (collecting cases in which counsel's failure to investigate a potentially important witness constituted ineffective assistance).

With respect to claims of appellate counsel, an appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.  As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must

demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

On direct appeal, Petitioner raised the claims of ineffective assistance of trial counsel that he now presents.  The Michigan Court of Appeals thoroughly and comprehensively rejected all of Petitioner's claims of ineffective assistance of trial counsel, whether raised in the brief filed by appellate counsel or raised in Petitioner's pro per supplemental brief.  Although Petitioner does not expressly raise some ineffective-assistance claims presented on direct appeal, he continues to complain of most of the underlying errors in his many habeas grounds.  As a consequence, the portions of the court of appeals' opinion addressing ineffective assistance of counsel are recited in their entirety:

> Brown next asserts that his trial lawyer was ineffective and that the trial court erred by denying his request for an evidentiary hearing. In order to establish a claim of ineffective assistance of counsel, the defendant must show that his trial lawyer's acts or omissions fell below an objective standard of reasonableness and that there is a reasonable probability that, but for those errors, the result of the proceeding would have been different.  *People v Gioglio (On Remand)*, 296 Mich

App 12, 22; 815 NW2d 589 (2012).  This Court reviews de novo whether a defendant's lawyer's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant. *Id.* at 19-20.

A trial court should grant a defendant's request for an evidentiary hearing if the defendant establishes that his ineffective assistance claim depends on facts not in the record.  See *People v Ginther*, 390 Mich 436, 443, 445; 212 NW2d 436 (1973) (noting that defendant's must make a testimonial record at the trial court level when relying on facts not of record to establish ineffective assistance and concluding that the defendant's motion for a hearing should have been granted because he showed the need for an evidentiary hearing).  Here, Brown's only offer of proof was the police report.  He provided the police report to establish that certain witnesses could have testified as to certain matters.  He did not, however, make an offer of proof regarding the facts that would be established at an evidentiary hearing regarding his ineffective assistance claims that were unrelated to the police report. In addition, the trial court accepted as true the statements of the witnesses that were contained in the police report.  Accordingly, because Brown did not establish the need for an evidentiary hearing, the trial court did not abuse its discretion when it denied his request.  *Id.*

Brown argues that his lawyer was ineffective for failing to "do a background check of witnesses and their history with specific reference to [the victim.]" However, Brown did not establish what this background check would have revealed and how his lawyer might have used that information to his benefit.  As such, he failed to establish that, but for counsel's alleged deficient performance, there is a reasonable probability that the result of the trial would have been different. *Gioglio*, 296 Mich App at 22.

He next claims that counsel was ineffective because he failed to take steps to locate Brown's answering machine, which had messages on it from the victim from both before and after the incident.  According to Brown, the fact that the victim called him after the incident would tend to show that the sexual encounter was consensual.  However, the victim admitted that she called Brown after the event at issue. Thus, as the trial court stated, that issue "was before the jury."  Moreover, Brown has not established how the actual recordings or testimony by others about the recordings might have altered the outcome.[2]  Accordingly, he has not established this claim of error.  *Id.*

Brown also claims that his lawyer was ineffective for failing to call numerous witnesses that were named in the police report. Brown faults his trial lawyer for failing to call the victim's brother and Cathy Jones, both of whom he states could have impeached the victim.  Specifically, Brown contends that both witnesses could have testified that they did not see marks or injuries on the victim when she told them that she had been raped.  However, the victim's brother recalled that the victim was "very upset" and "broke down crying" when she told him and

Jones remembered that the victim was crying when she recounted the rape. Thus, the testimony also had the potential to support the victim's version of events and render her account more credible. The decision whether to call a witness is generally a matter of trial strategy. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). And Brown's lawyer might have elected to forego these witnesses because their testimony might have bolstered the victim's credibility. Accordingly, we cannot conclude that Brown's lawyer's decision not to call these witnesses fell below an objective standard of reasonableness. See *Gioglio*, 296 Mich App at 22-23 (stating that "a reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission.").

Brown also argues that his trial lawyer should have called Sheila Hill, who stated that the victim was "always crying." Brown asserts that Hill's testimony would have shown that the victim's demeanor when reporting the rape was typical. However, the fact that the victim might cry easily is not impeachment evidence and Hill's statement did not suggest that the victim cried for false reasons. As such, Brown's lawyer might have reasonably concluded that her testimony would not be helpful. *Id.*

Brown maintains that his trial lawyer was deficient too because he failed to call his neighbors, Mark and Keena McAfee, to testify that they did not recall anyone knocking on their front door at night during the relevant time period. This, Brown believes, would show that the victim lied when she said she tried to get help at a neighboring house after the assault. However, the proposed testimony was consistent with the victim's testimony that no one answered and could just as easily have suggested that the McAfees did not hear the victim rather than that she lied about seeking help. Moreover, Mark McAfee stated that he "doesn't remember anything back that far" and that he would not dispute that a woman actually beat and kicked at his door. Given the limited and equivocal value of this testimony, Brown's trial lawyer may have determined that it would not be useful to call these witnesses. As such, Brown has not established that the decision not to call these witnesses fell below an objective standard of reasonableness. *Id.*

Brown next argues that counsel was ineffective for failing to question him about his sexual history with the victim. According to Brown, he wanted to argue that, although he did not engage in sexual penetration with the victim on the day at issue, had he wanted to, he would not have needed to use force because she had previously engaged in consensual intercourse with him. A defendant may present inconsistent defenses. *People v Lemons*, 454 Mich 234, 245; 562 NW2d 447 (1997). However, counsel's decision not to present a defense that was inconsistent with his theory is a matter of trial strategy that we will not second-guess. See *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999).

Brown claims that his lawyer was ineffective for failing to object to the admission of photographs of his house. According to Brown, the photographs were prejudicial because they gave the jury "a very wrong impression" about him; specifically, he notes that the photographs were taken after someone broke in and messed up the house. Relevant evidence is generally admissible. MRE 402. The photographs, as stated by the trial court, were "clearly relevant." They showed the layout of the part of the house where the offenses allegedly occurred, allowing the jury to have a better understanding of the victim's testimony. See MRE 401. Nevertheless, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403. The victim and Brown both testified that the photograph of the living room did not, in all aspects, accurately depict the house as it was in July 2010. Moreover, the fact that the home was messy is not the kind of prejudicial content that might warrant exclusion; it is doubtful that the jury would convict Brown of the charged offenses solely because they thought he was a poor housekeeper. See *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008) ("Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence."). Accordingly, any objection to the admission of the photographs on that basis would have been futile and Brown's lawyer was not ineffective for failing to make a futile objection. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

. . . Brown argues that counsel was ineffective for failing to object to the admission of the gun, which he claims was unlawfully seized from his house. Searches and seizures conducted without a warrant are unreasonable per se, subject to several exceptions, including a search conducted pursuant to consent. *People v Brown*, 279 Mich App 116, 131; 755 NW2d 664 (2008). Here, police testimony established that the gun at issue was seized after Brown gave his consent to search. Hence, any objection to the admission of the gun on that basis would have been futile. See *Fike*, 228 Mich App at 182.

* * *

Finally, Brown argues that he was denied effective assistance of counsel.[4] Brown claims that his lawyer was ineffective for (1) failing to challenge the victim's perjured testimony, (2) failing to challenge the prosecutor's conduct in soliciting perjured testimony, (3) failing to challenge the actions of the police department, and (4) failing to challenge the existence of certain evidence. However, Brown has failed to identify the legal basis on which counsel should have made these challenges and, therefore, has failed to establish that his counsel's conduct in failing to make them fell below an objective standard of reasonableness. *Gioglio*, 296 Mich App at 19-20.[5] Brown also claims that his counsel was ineffective for failing to file certain pretrial motions. Again, he has not identified the legal basis for the motions. Accordingly, Brown has not shown that the failure to file the motions fell below objective standards of reasonableness. *Id.*

51

Brown claims that counsel was ineffective for failing to do investigations, including investigating the possibility of two different police reports, the time frame in which an officer was laid off, and the possibility of getting the gun checked for fingerprints.  Failure to make a reasonable investigation can constitute ineffective assistance of counsel.  *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005).  However, even assuming that defense counsel did not conduct the investigations requested of him, Brown has not shown what additional facts would have been revealed through further investigation.  Accordingly, he has not shown that, but for counsel's alleged deficient performance, there is a reasonable probability that the result of his trial would have been different.  *Gioglio*, 296 Mich App at 19-20.

Brown asserts that his counsel was ineffective for failing to object to the admission of the photographs of his house.  According to Brown, because the photographs were taken after someone broke into his house, the photographs were inadmissible under MRE 404(b) because they depicted another crime.  However, MRE 404(b) is not relevant to the admission of the photographs.  The photographs, even if they depicted a home invasion, were not evidence of a crime, wrong, or act committed by Brown.  MRE 404(b)(1).  Because defense counsel is not required to make a futile objection, *Fike*, 228 Mich App at 182, counsel was not ineffective for failing to object to the photographs under MRE 404(b).

Brown also raises numerous other claims of ineffective assistance of counsel in his standard 4 brief.  He makes these claims without any reference to the record or to legal authority.  Consequently, he has not established that counsel's performance fell below objective standards of reasonableness. *Gioglio*, 296 Mich App at 19-20.

[2] Brown claimed that Henry Fritrail, his nephew, and Raymond Whitfield could have testified about the messages left by the victim on his answering machine.

[4] Because they were not part of the lower court record, we will not consider Brown's affidavit and the letters that he attached to his standard 4 brief. See *People v Seals*, 285 Mich App 1, 21; 776 NW2d 314 (2009).

[5] Brown also reasserted his claim that his lawyer should have done a background check on the victim.

(Mich. Ct. App. Op., ECF No. 16-7, PageID.712-715, 718-719.)  Although the court of appeals cites *People v. Gigolio*, 815 N.W.2d 589, 596-97 (Mich. Ct. App. 2012), for the standard of review on a claim of ineffective assistance of counsel, *Gigolio* expressly relies upon and applies the federal constitutional standard set forth in *Strickland*, 466 U.S. at 668.  The court of appeals therefore applied the correct legal standard to Petitioner's claims.

The court of appeals also reasonably applied the *Strickland* standard to Petitioner's multiple claims of ineffective assistance of trial counsel.   To the extent Petitioner argued that trial counsel failed to adequate investigate the existence of fingerprints, the court of appeals correctly held that, even if counsel neglected to have the gun checked for fingerprints, Petitioner has presented no evidence that such a check would have produced evidence helpful to Petitioner and that there exists a reasonable probability that the outcome would have been different.   Indeed, counsel reasonably could have concluded that testing the gun posed more risks than potential evidence.  If the gun tested positive for Petitioner's fingerprints, it could have added to the evidence against Petitioner, even though those prints could have been created at another time.   If the gun tested negative for fingerprints, the evidence could show no more than that fingerprints were not recoverable.   Either way, the presence or absence of prints would have done little to assist Petitioner's defense.  The state courts therefore reasonably concluded that Petitioner had failed to demonstrate actual prejudice arising from counsel's performance.

In addition, even assuming that trial counsel did not discover when Meekins was laid off or when the prosecutor received the complaint, such failures would not amount to ineffective assistance of counsel.  Petitioner wished to know this information, in order to support his claim raised in Ground IV that the delay in commencement of trial violated due process. However, as previously discussed, the delay in the commencement of trial did not violate due process, because Petitioner utterly failed to allege that the delay either was the result of an attempt to use delay to disadvantage Petitioner or was prejudicial.  As a result, proof about the timing of the investigatory events was irrelevant to any reasonable claim.   Petitioner therefore cannot demonstrate actual prejudice arising from the alleged errors.

Moreover, to the extent that Petitioner continues to allege that counsel failed to investigate various witnesses, he utterly fails to overcome the deference owed to the court of appeals' determination that counsel acted reasonably in not pursuing those witnesses for trial. As the court of appeals recognized, none of the witnesses Petitioner proposed to present at trial actually undercut the victim's testimony. The court of appeals recognized that the trial court, in denying the motion for an evidentiary hearing on the motion for new trial, had assumed that the witnesses Petitioner referenced would testify consistently with the summaries in the police reports – the only facts upon which Petitioner rested his claim. The police reports showed that the neighbor who lived next door to Petitioner (Mark McAfee) did not remember the victim pounding on their door that night, because he was interviewed so long after the event. But Mr. McAfee did not deny that it could have happened. McAfee subsequently asked his wife, and she, too, could not remember the incident. Even if the McAfees had testified consistent with the police report, as Petitioner suggests they would have done, their testimony would have been equivocal and largely unhelpful. (Police Report, Attach. to Pet'r's Supp. Br. on Appeal, ECF No. 16-7, PageID.845.)[3]

Similarly, Rodney Jennings, the victim's brother, told police that the victim did not initially tell him about the incident, but she came to him very upset a day or two after the incident. The victim broke down crying when she told him that Petitioner had put a gun in her mouth and raped her. Jennings reported that he did not notice any marks on her, and he did not know if she had any injuries. (*Id.*, PageID.842.) Despite not verifying the victim's claimed injuries, Jennings did not deny that she had injuries. In addition, he corroborated the fact that the victim was very upset and cried when she told the story. As the court of appeals concluded, a reasonable attorney

---

[3] Although the Michigan Court of Appeals declined to consider the attachments to the brief on appeal because they had not been presented below, defense counsel expressly indicated on the record that he had attached the police report of interviews of the witnesses to his motion for new trial. (Hr'g on Mot. for New Trial, ECF No. 16-6, PageID.655.) In addition, the trial court stated that it had carefully reviewed the police report attached to the brief. (*Id.*, PageID.661.)

could have concluded from the police report that Rodney Jennings' testimony was more likely to bolster the victim's credibility.  Petitioner therefore has failed to overcome the presumption that counsel's performance fell within the range of objective reasonableness.

Petitioner next points to the possible testimony of Sheila Hill, who told the police that she did not remember anything about the event, but she remembered IJ "breaking down and crying about an incident that happened to her[.]"  (*Id.*, PageID.842.)  Hill noted that IJ was "always crying."  (*Id.*)  As with the other witnesses, Hill's testimony, to the extent it was relevant, highlighted that IJ was upset about an incident.  The court of appeals correctly found that the fact that IJ had a propensity to cry did not rise to the level of impeachment evidence, because it did not suggest that IJ cried for false reasons.  The court of appeals reasonably applied *Strickland* to determine that Petitioner had failed to overcome the presumption that counsel acted strategically in not calling Hill as a witness.

In addition, Petitioner argues that trial counsel did not run a background check on the victim, resulting in a failure to investigate.  However, as both the trial court and the court of appeals reasonably concluded, Petitioner has never presented evidence of significant impeachment evidence that could have been discovered.  (Hr'g on Mot. for New Trial, ECF No. 16-6, PageID.677-679; Mich. Ct. App. Op., ECF No. 16-7, PageID.713.)

Petitioner argues that his trial attorney rendered ineffective assistance by failing to object to the trial court's refusal to admit Officer Meekins' police report and the transcript of the preliminary examination.  As I previously discussed, both the trial court and the Michigan Court of Appeals concluded that the report was inadmissible hearsay under Michigan law.  As a result, any objection by counsel would have been futile.  Counsel's failure to make a frivolous or meritless

motion does not constitute ineffective assistance of counsel.  *See Smith*, 591 F.3d at 523; *O'Hara*, 499 F.3d at 506; *Harris*, 204 F.3d at 683.

In Ground III, Petitioner contends that counsel was ineffective in failing to object to the court's refusal to admit the transcript of the preliminary examination, specifically, the transcript of IJ's testimony.  However, the trial court never reached such a determination, as no attempt was made to admit the preliminary-examination transcript.  Moreover, any attempt to admit that transcript would have been frivolous.   Under MICH. R. EVID. 804(b)(1), former testimony of a witness is admissible only if that witness is unavailable.  Given that IJ was available and testified at trial, the transcript of her testimony at the preliminary examination was inadmissible.  Instead, trial counsel made use of her preliminary-examination testimony to cross-examine and impeach her.  (T. Tr. I, ECF No. 16-3, PageID.457-458.)  Petitioner therefore fails to show either that counsel's performance was unreasonable or that he was actually prejudiced.

Next, in Ground XI, Petitioner argues that counsel was ineffective in failing to object to improper jury instructions.  Petitioner specifically contends that the court improperly instructed the jury that it could find Petitioner guilty of assault with a dangerous weapon if it concluded that Petitioner had assaulted IJ with either a shotgun or a hatchet or hammer-like object.

Ordinarily, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review.  Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process.  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  *See also Estelle*, 502 U.S. at 75 (erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders*, 221 F.3d at

860.  If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law.  *Id.*

Petitioner does not explain why the instruction was erroneous, nor is error obvious on the record.  IJ expressly testified that Petitioner threatened her with both the gun and the hatchet or hammer.  The mere fact that Petitioner insists that IJ's testimony was false does not render the instruction erroneous.  It most certainly falls short of demonstrating that the instruction infused the trial with unfairness.  *Estelle*, 502 U.S. at 75.

Finally, for all of his claims concerning counsel's failure to investigate, Petitioner argues that his appellate attorney was ineffective in failing to attach evidence such as affidavits and offers of proof to his motion for new trial, Petitioner has never identified to any court what information could have been attached that would demonstrate either that counsel failed to investigate or that he was prejudiced by counsel's failure to investigate.  A court "cannot conclude that [] counsel was deficient solely on [the petitioner's] version."  *See Fitchett v. Perry*, 644 F. App'x 485, 489 (6th Cir. 2016) (holding that "sheer speculation" of inadequate investigation does not state a claim).  "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'"  *Burt*, 134 S. Ct. at 17 (quoting *Strickland*, 466 U.S. at 689).

For all these reasons, Petitioner's many claims of ineffective assistance of trial and appellate counsel are meritless.  Grounds II, III, and XI therefore should be denied.

### Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken.  28 U.S.C. § 2253(c)(1).  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C.

§ 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated:  May 25, 2018                               /s/ Ray Kent
                                                   United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).